**FILED**
FEB 10 2016

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

James Irving Dale,

    Plaintiff,

Vs.

James Robert Ketcher,

Travis Tjeerdsma, Tammy Dejong,

Joshua Klimek, Corey Tyler,

Lee Kaufenberg, Robert Dooley,

Darin Young, Mary Carpenter,

Unknown Department of Corrections Employees,

Unknown Department of Health Employees,

    Defendants.

U.S.D.C. File: 16-cv-4024

**CIVIL RIGHTS COMPLAINT AND LEGAL DECLARATION**

## INTRODUCTION

This is a civil rights complaint and legal declaration brought by the Plaintiff, James Irving Dale, pursuant to 42 U.S.C § 1983 and 42 U.S.C. § 2000 cc (2), alleging that the Defendants violated, or conspired to violate, the Plaintiff's First, Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution and 42 U.S.C. § 2000 cc Religious Land Use Institutionalized Persons Act ("RLUIPA"). Plaintiff further alleges that several of the above named defendants retaliated against the Plaintiff for exercising his right to access the courts to seek relief for ongoing Constitutional violations.

## JURISDICTION

This Court has jurisdiction over Plaintiff's claims of ongoing Constitutional violations pursuant to 28 U.S.C. § 1331 (1) and 1343.

## PARTIES

1. Plaintiff, James Irving Dale, is an inmate who is currently incarcerated at the South Dakota State Penitentiary ("SDSP") in Sioux Falls, South Dakota, and was formerly and inmate incarcerated at Mike Durfee State Prison ("MDSP") in Springfield, South Dakota.

2. Defendant, James Robert Ketcher, is an inmate incarcerated at Mike Durfee State Prison ("MDSP"). James Robert Ketcher has been transferred to the South Dakota Department of Corrections ("D.O.C.") from the Minnesota D.O.C. for protective custody reasons, and is paid by the South Dakota D.O.C. to act as a Confidential Informant ("CI").

3. Defendant, Travis Tjeerdsma, is a Case Manager at Mike Durfee State Prison.

4. Defendant, Tammy Dejong, is a Unit Coordinator at Mike Durfee State Prison.

5. Defendant, Lee Kaufenberg, is the head of special security at Mike Durfee State Prison, who investigated some of the issues raised in this civil rights complaint.

6. Defendant, Joshua Klimek, is a Unit Manager at Mike Durfee State Prison.

7. Defendant, Corey Tyler, is a Correctional Officer, with the rank of Sergeant, and a Disciplinary Hearing Officer ("DHO"), at Mike Durfee State Prison.

8. Defendant, Robert Dooley, is the Warden at Mike Durfee State Prison, and the Director of Prison Operations for the South Dakota D.O.C.

9. Defendant, Darin Young, is the Warden at the South Dakota State Penitentiary.

10. Defendant, Mary Carpenter, is the Director of Health Services for the South Dakota D.O.C. and is employed by both the South Dakota D.O.C. and the South Dakota Department of Health ("DOH").

11. Defendants, Unknown Department of Corrections Employees, are D.O.C. employees at both MDSP and SDSP.

12. Defendants, Unknown Department of Health Employees, are employees of the South Dakota Department of Health ("DOH").

13. The Plaintiff brings this suit against all of the known and unknown Defendants in both their individual and official capacities.

## FACTS

14. On or about Thursday, September 17, 2015, while the Plaintiff's ("Dale") was incarcerated at MDSP his then roommate, Rex Gard, told Dale that he had just been in the Case Manager's, Defendant Tjeerdsma, office and both Defendant Tjeerdsma and Defendant Dejong had been complaining to him about all the extra work they had to perform because of Dale's discovery requests in the matter of *James Irving Dale v. Tammy Dejong, et al.*, 14-CV-4102.

15. Dale then requested that inmate Rex Gard type up an affidavit or legal declaration about what Defendant Tjeerdsma and Defendant Dejong had said; inmate Rex Gard then typed up an affidavit about his conversation with Defendants Tjeerdsma and Dejong.

16. On Wednesday, September 23, 2015, Dale moved from room 125 in the West Crawford living unit to room 102 in the West Crawford living unit. Dale's new roommates were James Robert Ketcher and Roger Delzer (not sure of the spelling)

17. On Friday, September 25, 2015, Dale's roommate, Defendant Ketcher, came into the room and told Dale that he just been in Defendants Tjeerdsma and Dejong's office; and they were complaining to him about all the extra work that they had to perform because of Dale's lawsuit against the D.O.C. Defendant Ketcher further stated that since he was a transfer from another state for protective custody purposes he did not need Dale bringing a bunch of heat to the room, or trouble from MDSP staff.

3

18. Dale informed Defendant Ketcher that his lawsuit had nothing to do with him and would not affect him. Defendant Ketcher then spent the rest of the day agitated.

19. On Monday, September 28, 2015, after 9:45 pm count cleared; inmate Demetrius Colaites came into room 102 and started kissing and fondling Defendant Ketcher genitals. Demetrius Colaites is HIV positive, and is in prison for having sex with people and not telling them about his HIV positive status. MDSP staff knows that Demetrius Colaites and Defendant Ketcher have a sexual relationship, but do nothing to stop it.

20. Dale then confronted both Demetrius Colaites and Defendant Ketcher, and told them that he did not want to observe them having sex and that they should go to the shower, or to Demetrius Colaites room.

21. Demetrius Colaites then left the room, and Defendant Ketcher became agitated and told Dale to mind his own business. Dale then told Defendant Ketcher that he could do what ever he wants, but not in from of him because Dale is an observant Jew and the Torah states that homosexuality is an abomination in the eyes of God.

22. On Tuesday, September 29, 2015, Defendant Ketcher went to Case Manager Travis Tjeerdsma's office and gave Defendant Tjeerdsma an eight inch Plexiglas shank (that Ketcher made in the auto-body shop) and told Defendant Tjeerdsma that it belonged to Dale.

23. A short time later Defendant Tjeerdsma called Dale's former roommates (from room 125) Rex Gard and Stan Maday to his office and asked them if they had ever seen Dale with a shank, or heard of Dale being in possession of a shank; and if that is the reason Dale moved out or room 102.

24. When Dale found out that Defendant Tjeerdsma had asked inmates Rex Gard and Stan Maday if they had ever observed him with a shank; Dale went to Defendant Tjeerdsma's office and asked Defendant Tjeerdsma if he has been inquiring about him.

25. Defendant Tjeerdsma then informed Dale that he had been given a shank by a confidential informant, and then inferred that Dale's former roommates had told him that they had also seen Dale with a shank. Defendant Tjeerdsma then had Dale placed in disciplinary segregation ("SHU") for possession of contraband weapon.

26. Later that afternoon the West Crawford Unit Manager, Defendant Klimek, came to the SHU and spoke to Dale. When Dale explained to Defendant Klimek what had transpired between Defendant Ketcher and Dale the evening before, that Dale had never been caught with a shank in his possession or in his personal belongings, and that even he should see that something is not right about the situation; Defendant Klimek responded by telling Dale that he did not believe that Dale did not know that there was a shank in room 102 (the room Dale shared with Defendant Ketcher) and that either way Dale was going to be transferred to SDSP.

27. Dale was later served with an M-3 "Possession of Contraband" weapon, major disciplinary report that was written by Defendant Tjeerdsma. In said disciplinary report Defendant Tjeerdsma claimed that three inmates had seen Dale in possession of a shank. In a later Informational Report Defendant Tjeerdsma claimed that the three inmates who had seen Dale with a shank were Rex Gard, Stan Maday, and Defendant Ketcher.

28. On Monday October 5, 2015, Dale had a major disciplinary hearing in front of Disciplinary Hearing Officer ("DHO") Sergeant Corey Tyler, who is a defendant in the matter of *James Irving Dale v. Tammy Dejong, et al.*, 14-CV-4102. When Dale walked into the office for his

5

DHO hearing he noticed that Defendant Tyler already had a commissary slip filed out with Dale's name on it for a $99.00 fine.

29. At Dale's DHO hearing both inmates Rex Gard and Stan Maday testified that they had never seen Dale with a shank, or heard of Dale having a shank. Further evidence was introduced that showed that the Plexiglas for the shank had come from the auto-body shop.

30. At that DHO hearing Dale explained to Defendant Tyler what had transpired between Defendant Ketcher and Dale on the evening of September 28, 2015, regarding Defendant Ketcher and Demetrius Colaites homosexual activity, that Dale was never in possession of a shank, had no need for a shank, and that the only person who had allegedly ever seen Dale with said shank was Defendant Ketcher.

31. At the end of the DHO hearing Defendant Tyler found that Dale had committed the offense of an M-3 "Possession of Contraband" and sentenced Dale to thirty (30) days in the SHU and a $99.00 fine.

32. When Dale was returned to his SHU cell after his DHO hearing he noticed that his property was already packed up and ready for Dale to be transferred to SDSP.

33. On Tuesday October 6, 2015 (the following morning); Dale was transferred from MDSP to SDSP and was placed in the SDSP SHU upon arrival.

34. It usually takes five to seven days for a transfer order to go through, so the only way that Dale could have been on the transfer list so soon after his DHO hearing is if MDSP staff had put Dale on the transfer list the five to seven days before his DHO hearing.

35. On October 13, 2015, Dale was released from the SDSP SHU.

36. On October 16, 2015 Dale received his personal property.

6

37. After going through his personal property Dale noticed that the following legal material was missing:

   a) The affidavit that inmate Rex Gard swore out concerning the comments that Defendants Tjeerdsma and Dejong made to him about all the extra work they had to because of Dale's discovery request.

   b) An affidavit from an inmate kitchen worker at MDSP regarding the fact that CBM Correctional Food Services Supervisor, Barry Schroeter, was feeding mainline inmates the kosher sausages that he claimed that he fed to Jewish inmates who ate the kosher trays in the matter of *James Irving Dale v. Robert Dooley, et al.*, U.S.D.C. 14-CV-4003, and was also selling said kosher sausages to correctional officers off the back dock at MDSP.

   c) An affidavit from another inmate kitchen worker who had obtained another label off a package of the rice entrée that CBM Correctional Food Services feeds to Jewish inmates at MDSP; that shows that the rice entrée is not kosher and contained pork byproducts, along with the actual label.

   d) Affidavits from two inmate kitchen workers who were told by CBM Correctional Food Services Staff to wash the pots and utensils used to cook the rice entrée fed to Jewish inmates with the same pots and pans used to cook mainline food, including pork products.

   e) Dale's only copy of his amended civil rights complaint in the matter of *James Irving Dale v. Robert Dooley, et al.*, U.S.D.C. 14-CV-4003.

   f) An Affidavit from inmate Dennis Stanish regarding the way his consecutive sentences are calculated that Dale needed for his Writ of Habeas Corpus.

g) Two clear plastic legal folders that held all of the aforementioned affidavits and other evidence.

38. There was no valid penological interest for any of the defendants to confiscate or destroy the aforementioned legal documents or evidence.

39. The confiscation of the aforementioned legal documents and evidence has interfered with Dale's ability to litigate the matters of James *Irving Dale v. Tammy Dejong, et al.*, 14-CV-4102, and *James Irving Dale v. Robert Dooley, et a*l., U.S.D.C. 14-CV-4003.

40. Dale will need the aforementioned legal documents and evidence to show that MDSP staff has retaliated against Dale in the matter of *James Irving Dale v. Tammy Dejong, et al.*, 14-CV-4102; for both summary judgment purposes and at trial

41. Dale will need the aforementioned legal documents and evidence to show that CBM Correctional Food Services Staff and the South Dakota D.O.C. have been feeding Dale, who is Jewish, food that is not kosher or prepared in accordance with kosher/rabbinical law in the matter of James *Irving Dale v. Robert Dooley, et a*l., U.S.D.C. 14-CV-4003.

42. In December of 2015, Dale had a hearing in front of the South Dakota Board of Paroles; the fact that Dale had recently been found guilty of an M-3 "Possession of Contraband" discipline report was raised at that hearing and was the deciding factor in the Parole Board denying Dale parole.

43. Dale has been diagnosed with being infected with the Hepatitis-C virus; there is now a cure for the Hepatitis-C virus, which consists of treating the infected person with the drug called Harvoni.

44. In order for Dale (any other inmate) to receive the Harvoni treatment for his Hepatitis-C infection; Dale has to have it prescribed by a Hepatology Specialist.

45. On January 22, 2014, the Physicians Assistant at MDSP, Michael Joe Hanvey, (who is a defendant in the matter of James *Irving Dale v. Tammy Dejong, et al.*, 14-CV-4102) submitted a request that Dale be referred to a Hepatology Specialist for treatment of his Hepatitis-C infection.

46. On March 1, 2014, that request was denied by Defendant Mary Carpenter, who is the only member of the South Dakota D.O.C. Utilization Management Committee ("UMC").

47. The current standard of care for Hepatitis-C infection is treatment with Harvoni; before Dale can be prescribed Harvoni he must have an appointment with a Hepatology Specialist.

48. Dale is Jewish and eats only kosher food. Due to Dale's recent $99.00 fine Dale has been forced to order indigent supplies from the SDSP commissary.

49. The only soap available to inmates who order indigent supplies through the SDSP commissary is "Dial" soap. "Dial" soap contains animal fat (tallow) and is not kosher.

50. The SDSP commissary sells "Next-1" soap; this soap is not made out of any animal products and is both kosher and halal.

51. The SDSP administration allows Muslim inmates to order "Next-1" soap from the indigent commissary list, but refuse to allow Dale to order "Next-1" soap from the indigent commissary.

52. Forcing Dale to use soap that is not kosher and contains non-kosher animal products violates Dale's sincerely held religious beliefs.

53. Dale filed an Informal Resolution Request over this issue; however, SDSP staff did not give Dale the Unit Coordinators response to Dale's Informal Resolution Request until after the deadline to file an Administrative Remedy had expired.

54. Defendant Young then refused to respond to Dale's Administrative Remedy request, over the non-kosher soap issue, by claiming that Dale did not file the Administrative Remedy request on time.

## EXHAUSTION OF REMEDIES

55. The Plaintiff has filed Informal Resolution Requests on the issues raised in this civil rights complaint, but was unable to obtain any relief through the Informal Resolution Request process.

56. The Plaintiff has filed Administrative Remedy Requests on the issues raised in this civil rights complaint, but was unable to obtain any relief through the Administrative Remedy Request process.

## GROUNDS FOR RELIEF

57. That Defendants James Robert Ketcher, Travis Tjeerdsma, Tammy Dejong, Joshua Klimek, Corey Tyler, Lee Kaufenberg, Robert Dooley, Darin Young, and Unknown Department of Corrections Employees; have violated, or conspired to violate, Plaintiff's First, Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution by retaliating against the Plaintiff for exercising his right to access the courts to seek relief for ongoing Constitutional violations.

58. That Defendants Mary Carpenter, and Unknown Department of Health Employees, have violated, and conspired to violate, the Plaintiff's Eighth Amendment under the United States Constitution.

59. That Defendants Darin Young, and Unknown Department of Corrections Employees; have violated the Plaintiff's First Amendment rights under the United States Constitution and 42 U.S.C. § 2000 cc "Religious Land Use Institutionalized Persons Act."

## RELIEF REQUESTED

THE Plaintiff Requests that this Court hold a trial on the issues raised in this civil rights complaint and in the event that the Plaintiff proves that the Defendants violated the Plaintiff's rights under the United States Constitution and Federal law grant Plaintiff the following relief:

I. Issue a declaratory judgment stating that:

   a. Defendants James Robert Ketcher, Travis Tjeerdsma, Tammy Dejong, Joshua Klimek, Corey Tyler, Lee Kaufenberg, Robert Dooley, Darin Young, and Unknown Department of Corrections Employees; have violated, or conspired to violate, Plaintiff's First, Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution.

   b. Defendants Mary Carpenter, and Unknown Department of Health Employees, have violated, and conspired to violate, the Plaintiff's Eighth Amendment under the United States Constitution.

   c. Defendants Darin Young, and Unknown Department of Corrections Employees; have violated the Plaintiff's First Amendment rights under the United States Constitution and 42 U.S.C. § 2000 cc "Religious Land Use Institutionalized Persons Act."

II. Issue an injunction ordering the Defendants to:

   a. Provide the Plaintiff with kosher soap that conforms to the Plaintiff's religious beliefs.

   b. Return the legal documents that the Defendants confiscated from the Plaintiff.

   c. Expunge the M-3 "Possession of Contraband" discipline report from Plaintiff's Department of Corrections File.

   d. Schedule an appointment with a Hepatology Specialist for the Plaintiff's Hepatitis-C infection and follow the Hepatology Specialists recommendations or prescribed medical care.

11

III. Award the Plaintiff Presumptive or Compensatory damages in the amount of $5,000 against Defendant James Robert Ketcher.

IV. Award the Plaintiff Punitive damages in the amount of $10,000 against Defendant James Robert Ketcher.

V. Award the Plaintiff Punitive damages in the amount of $10,000 jointly and severely against Defendants Travis Tjeerdsma, Tammy Dejong, Joshua Klimek, Corey Tyler, Lee Kaufenberg, Robert Dooley, and Darin Young.

VI. Award the Plaintiff Punitive damages in the amount of $10,000 against Defendant Mary Carpenter.

VII. Award the Plaintiff Nominal Damages in the amount of $1.00 jointly and severely against Defendants James Robert Ketcher, Travis Tjeerdsma, Tammy Dejong, Joshua Klimek, Corey Tyler, Lee Kaufenberg, Robert Dooley, Darin Young, and Mary Carpenter.

Pursuant 28 U.S.C. § 1746 the Plaintiff, James Irving Dale, swears under penalty of perjury that the facts in this 42 U.S.C. § 1983 civil rights action are true and correct.

Signed sworn and submitted this 4th day of February, 2016.

James Irving Dale #1526
South Dakota State Penitentiary
Post Office Box-5911
Sioux Falls, SD 57117-5911