UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

FILED
MAR 17 2016
CLERK

| | |
|---|---|
| JAMES IRVING DALE,<br><br>   Plaintiff,<br><br>vs.<br><br>JAMES ROBERT KETCHER, TRAVIS TJEERDSMA, TAMMY DEJONG, JOSHUA KLIMEK, COREY TYLER, DARIN YOUNG, MARY CARPENTER, UNKNOWN DEPARTMENT OF CORRECTIONS EMPLOYEES, UNKNOWN DEPARTMENT OF HEALTH EMPLOYEES,<br><br>   Defendants. | 4:16-CV-04024-RAL<br><br><br>OPINION AND ORDER DIRECTING SERVICE |

Plaintiff James Irving Dale ("Dale") filed this lawsuit pursuant to 42 U.S.C. § 1983. Doc. 1. Dale is an inmate at the South Dakota State Penitentiary in Sioux Falls. This Court has screened his complaint pursuant to 28 U.S.C. § 1915A. For the following reasons, Dale's claims survive screening.

  **I. FACTS ALLEGED IN THE COMPLAINT**[1]

On September 17, 2015, while Dale was incarcerated at Mike Durfee State Prison, his cellmate, Rex Gard, told him that Travis Tjeerdsma and Tammy Dejong were in Tjeerdsma's office complaining about extra work they

---

[1] This Court makes no findings of fact at this point in the case. The matters set forth in this section are taken from the factual allegations pled in Dale's Complaint, which this Court must take as true on initial screening.

had to do because of Dale's pending lawsuit, *Dale v. Dejong et al* 14-CV-4102. Doc. 1 at ¶ 14. Dale asked Gard to swear to this in an affidavit. *Id.* at ¶ 15.

On September 23, 2015, Dale was reassigned to a different cell. *Id.* at ¶ 16. James Robert Ketcher, one of Dale's new cellmates, told Dale two days later that Tjeerdsma and Dejong were again complaining about the extra work they had to do because of Dale's case. *Id.* at ¶ 17. Ketcher squabbled with Dale, saying that he did not want any extra trouble from prison staff because Ketcher was a transferee under protective custody. *Id.* at ¶¶ 17, 18.

On September 28, 2015, another inmate entered the cell while Dale and Ketcher were inside. *Id.* at ¶ 19. Dale alleges that the other inmate began kissing Ketcher and fondling his genitals. *Id.* Dale confronted both men, telling them to go elsewhere. *Id.* at ¶ 20. After the other inmate left, Ketcher got mad and told Dale to mind his own business. *Id.* at ¶ 21. Dale explained that while Ketcher could do what he pleased elsewhere, he could not do that in front of Dale because "homosexuality is an abomination in the eyes of God." *Id.*

The next day, Ketcher allegedly took a homemade knife, a "shank," made of plexiglass and turned it into Tjeerdsma, telling him that it belonged to Dale. *Id.* at ¶ 22. Because Gard and Stan Maday were Dale's previous roommates, Tjeerdsma called them into his office to ask them whether they had ever seen Dale with a shank. *Id.* at ¶ 23. Dale was told about this and went to see Tjeerdsma. *Id.* at ¶ 24. Dale asked Tjeerdsma if he had asked Gard and Maday about the shank. *Id.* Tjeerdsma told Dale that he received the shank from a

2

confidential informant and put Dale in the segregated housing unit ("SHU"). *Id.* at ¶ 25.

While Dale was in the SHU, Unit Manager Joshua Klimek visited him and asked what happened. *Id.* at ¶ 26. Dale explained the situation to Klimek, saying that he knew nothing about the shank. *Id.* Klimek told Dale that he did not believe Dale's story and that Dale would be transferred to the South Dakota State Penitientiary ("SDSP").

Prison officials levied an M-3 contraband charge against Dale. *Id.* at ¶ 27. The major disciplinary report, written by Tjeerdsma, states that Gard, Maday, and Ketcher all claimed they saw Dale with the shank. *Id.*

Dale's hearing was led by Disciplinary Hearing Officer Corey Tyler, a defendant in Dale's pending lawsuit. *Id.* at ¶ 28. Dale alleges that Tyler already had the commissary slip filled out when Dale entered the hearing, meaning the outcome was never in question. *Id.* At the hearing, Gard and Maday testified that they had never seen Dale with the shank. *Id.* at ¶ 29. Dale also introduced evidence that the shank came from the prison repair shop to which Ketcher has access. *Id.* at ¶¶ 22, 29. Dale argued that Ketcher was the only person who had allegedly seen him with the shank and explained to Tyler the events that led to Dale and Ketcher's fight. *Id.* at ¶ 30. Nevertheless, Dale was found guilty. *Id.* at ¶ 31. He was sentenced to thirty days in the SHU and a fine of $99. *Id.*

Returning to his cell after the hearing, Dale found his possessions already packed. *Id.* at ¶ 32. The next day he was transferred to SDSP. *Id.* at ¶ 33. Because he believes that orders to transfer prisoners take a certain

amount of time to go through the prison system, Dale alleges that the order was signed and approved before his hearing. *Id.* at ¶ 34.

Upon his arrival at SDSP, Dale was immediately placed in the SHU. *Id.* at ¶ 33. After he was released to the general population, Dale received his personal property from MDSP. *Id.* at ¶ 36. Dale alleges that some of his possessions were missing including affidavits related to his pending lawsuit, his only copy of the complaint in his pending lawsuit, an affidavit for his habeas petition, and an affidavit related to the present lawsuit. *Id.* at ¶ 37. Dale claims that he needs these materials in order to respond to a motion for summary judgment and prepare for trial, and the fact that he does not have them interfered with his ability to litigate his lawsuit. *Id.* at ¶¶ 39, 40.

In December 2015, Dale had a parole hearing and was denied parole. *Id.* at ¶ 42. His disciplinary report concerning the shank at MDSP was raised, and Dale alleges that it was the deciding factor in the board's decision to deny him parole. *Id.*

Dale has Hepatitis C. *Id.* at ¶ 43. He alleges that a cure for Hepatitis C exists which includes taking the drug Harvoni. *Id.* To be prescribed Harvoni, Dale must first see a hepatology specialist. *Id.* at ¶ 44. On January 22, 2014, Michael Joe Hanvey, a physician's assistant at MDSP, requested that Dale be sent to a specialist for Hepatitis C treatment. *Id.* at ¶ 45. This request was allegedly denied by Mary Carpenter. *Id.* at ¶ 46.

Dale is Jewish and follows a kosher diet. *Id.* at ¶ 48. After he was fined for the shank incident, he was forced to order indigent supplies, including

soap, from the SDSP commissary. *Id.* The commissary offers two brands of soap, one which contains animal fat and one which does not and is therefore kosher. *Id.* at ¶¶ 49, 50. Dale alleges that indigent Muslims at SDSP are allowed to order kosher soap from the commissary list but he is not. *Id.* at ¶ 51. He also alleges that using non-kosher soap violates his religious beliefs. *Id.* at ¶ 52.

## II.     PROCEDURAL BACKGROUND

Dale filed this complaint on February 10, 2016, pursuant to 42 U.S.C. § 1983. Doc. 1. He raises a number of claims. Although he does not clearly delineate the nature or parameters of his claims, the court construes them as follows.

He claims that defendants retaliated against him for filing his pending lawsuit. *Id.* at ¶ 57. Within this claim, he also raises a claim for retaliatory discipline and retaliatory transfer which are legally distinct. He claims that Carpenter and Department of Health employees violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. *Id.* at ¶ 58. Finally, he claims that defendants violated his rights under the Religious Land Use Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. *Id.* at ¶ 59.

Dale seeks injunctive and declaratory relief as well as damages. Doc. 1 at 11. He first requests that the Court issue a declaratory judgment that defendants violated his constitutional rights. *Id.* He also requests injunctive relief to get kosher soap, to get his legal documents back, to expunge his M-3

disciplinary charge from his record, and to schedule an appointment with a hepatology specialist. *Id.* He finally requests compensatory, punitive, and nominal damages from various defendants. *Id.* at 12.

### III. LEGAL STANDARD

At this stage of the case, this Court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "If a plaintiff cannot make the requisite showing, dismissal is appropriate." *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985).

Under 28 U.S.C. § 1915A, this Court must screen prisoner claims filed in forma pauperis and determine whether they are (1) "frivolous, malicious, or fail[ ] to state a claim on which relief may be granted; or (2) seek[ ] monetary relief

from a defendant who is immune from such relief." *See also Onstad v. Wilkinson*, 534 F. App'x 581, 582 (8th Cir. 2013).

## IV. DISCUSSION

Dale's complaint raises five claims. He raises three retaliation claims, a claim of deliberate indifference to his serious medical needs, and a claim under RLUIPA.

### A. Dismissed Defendants

As an initial matter, Dale's complaint does not state a claim against certain defendants. Ketcher is dismissed as a defendant. Section 1983 "imposes liability for certain actions taken under color of law . . . ." *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (citation and quotations omitted). Ketcher is merely an inmate, and Dale pleads no facts to show that Ketcher acted "under color of law." Section 1983 does not provide Dale a cause of action against Ketcher, and Ketcher is therefore dismissed as a defendant.

Kaufenberg is dismissed as a defendant. Dale's complaint does not include any mention of Kaufenberg outside of the "parties" and "relief" sections. Dale pleads no facts supporting any claim against Kaufenberg. Therefore, Kaufenberg is dismissed.

Dooley and Young are dismissed as defendants. Dale's complaint does not mention Dooley and Young outside of the "parties" and "relief" sections and raises no facts supporting any claim against them. Dale may have named

Dooley and Young in their supervisory capacities. In the "parties" section, Dale names Dooley and Young as wardens of MDSP and SDSP. Doc. 1 at ¶¶ 8, 9.

"[V]icarious liability is inapplicable to § 1983 suits[.]" *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). A supervisor's liability must be based on his or her own "deliberate indifference or tacit authorization." *Grayson v. Ross*, 454 F.3d 802, 811 (8th Cir. 2006) (quoting *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994)). Dooley and Young are not mentioned in the complaint in any capacity other than their supervisory capacities. Dale pleads no facts supporting any claim against Dooley or Young for their own actions. Therefore, they are dismissed.

**B.     Retaliation**

Dale's complaint does not specify what he means by "retaliation." The Court construes his complaint as raising a claim for retaliation as well as retaliatory discipline and retaliatory transfer.

**1.     Dale's Claim for Retaliation Survives Screening**

Dale claims that defendants retaliated against him for exercising his constitutional rights.

> In order to demonstrate retaliation in violation of the First Amendment under 42 U.S.C. § 1983, [Dale] must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity."

8

*Spencer v. Jackson Cty. Mo.*, 738 F.3d 907 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). "The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for 'the exercise of a constitutionally protected right.'" *Id.* (quoting *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001)).

Dale alleges that he filed a previous lawsuit against defendants. Doc. 1 at ¶ 14. It is well established that "[t]hose in prison 'have a constitutional right of access to the courts.'" *Williams v. Hobbs*, 658 F.3d 842, 851 (8th Cir. 2011) (quoting *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). Dale alleges that defendants took his legal materials from him in retaliation for filing a lawsuit. Doc. 1 at ¶¶ 37-40. Dale alleges these documents were needed to successfully litigate his case. *Id.* at ¶ 39. He raises a viable claim for retaliation.

2. **Dale's Claim for Retaliatory Discipline Survives Screening**

Dale claims defendants brought false disciplinary charges against him in retaliation for naming them as defendants in a lawsuit. "A prisoner has a cause of action when the prisoner alleges that prison officials filed disciplinary charges based upon false allegations against the prisoner in retaliation for the prisoner's participation in grievances against prison officials." *Santiago v. Blair*, 707 F.3d 984, 993 (8th Cir. 2013) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)). Dale alleges that the defendants in his previous lawsuit are the same individuals who disciplined him. The discipline came soon after defendants were allegedly struggling with the extra work caused by Dale's previous lawsuit. Dale raises a viable claim for retaliatory discipline.

9

### 3. Dale's Claim for Retaliatory Transfer Survives Screening

Dale claims he was transferred to SDSP in retaliation for filing a lawsuit against defendants. The prohibition against disciplining inmates in retaliation for exercising the right of access to the courts applies to transfers. *Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012); *Sisneros v. Nix*, 95 F.3d 749, 751 (8th Cir. 1996). Dale alleges his transfer was in retaliation for his lawsuit. He alleges that he was transferred by defendants in his previous lawsuit while they were dealing with the extra work they had to do because of that lawsuit. Dale raises a viable claim for retaliatory transfer.

### C. Deliberate Indifference

Dale claims that Carpenter and unknown health department employees violated his rights under the Eighth Amendment. "To prevail on an Eighth Amendment claim for deprivation of medical care, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). Dale must show that "(1) [he] suffered from an objectively serious medical need, and (2) the prison official knew of the need yet deliberately disregarded it." *Id.* (citing *Coleman*, 114 F.3d at 784). Hepatitis C can be a serious medical need. Dale alleges that prison health staff requested Dale be treated for Hepatitis C, but Carpenter refused to treat his Hepatitis C. Dale raises a viable deliberate indifference claim.

Dale claims "Unknown Department of Health Employees" violated his Eighth Amendment rights; however he does not state any facts supporting this

claim. The only defendant who allegedly rejected his treatment was Carpenter. Therefore, defendants "Unknown Department of Health Employees" are dismissed.

**D.    RLUIPA**

Dale alleges that defendants violated his rights under RLUIPA. "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief[.]' " *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (quoting § 2000cc–5(7)(A)). "[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation," and the prison policy must substantially burden the prisoner's exercise of religion. *Id.*

Dale alleges that defendants refuse to let him order kosher soap as an indigent supply through the commissary at SDSP. Doc. 1 at ¶ 51. Further, he claims that indigent Muslim inmates are allowed to order this soap through the commissary. *Id.* Use of non-kosher soap allegedly violates Dale's sincerely held religious beliefs. *Id.* at ¶ 52. Dale raises a viable RLUIPA claim.

## V.    ORDER

Accordingly, it is ORDERED

1. Defendants Ketcher, Kaufenberg, Dooley, Young, and Unknown Department of Health Employees are dismissed.
2. Dale's remaining claims survive screening under 28 U.S.C. § 1915A.
3. The Clerk shall send blank summons forms to plaintiff so he may cause the summons and complaint to be served upon the defendants.

11

4. The United States Marshal shall serve a copy of the complaint (Doc. 1), Summons, and this Order upon defendants Travis Tjeerdsma, Tammy Dejong, Joshua Klimek, Corey Tyler, and Mary Carpenter as directed by plaintiff. All costs of service shall be advanced by the United States.

5. Defendants will serve and file an answer or responsive pleading to the remaining claims in the complaint on or before 21 days following the date of service.

6. Dale will serve upon defendants, or, if appearance has been entered by counsel, upon their counsel, a copy of every further pleading or other document submitted for consideration by the court. He will include with the original paper to be filed with the clerk of court a certificate stating the date and that a true and correct copy of any document was mailed to defendants or their counsel.

7. Dale will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

Dated March 17th, 2016.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE